UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR-04-43-B-W |
| | ) | |
| WILLIAM AHRENDT, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON GOVERNMENT'S MOTION IN LIMINE
## REGARDING ADMISSIBILITY OF EXPERT TESTIMONY

Charged with conspiracy to distribute cocaine, William Ahrendt seeks to admit the testimony of a clinical psychologist to explain his idiosyncratic thinking process and highly abstracted philosophy of life.  Because the danger of unfair prejudice, confusion of the issues, and misleading the jury substantially outweighs any tangential probative value, this Court concludes the expert testimony is inadmissible.

## I.  FACTUAL BACKGROUND

Pursuant to Fed. R. Crim. P. 12.2(b), on July 28, 2005, Defendant Ahrendt filed a "Notice of Expert Evidence of a Mental Condition," giving notice of his intention to "introduce expert evidence of a mental condition." (Docket # 321).   On August 15, 2005, the Government filed a Motion in Limine to Exclude Expert Testimony and attached a copy of a letter dated August 8, 2005 from Dr. Jeffrey W. Aston, a licensed clinical psychologist, setting forth a "brief summary of the testimony I can provide regarding William Ahrendt."  (Docket # 331, Ex. A).

> I first of all would not challenge the Bureau of Prisons' finding that Mr. Ahrendt is capable of comprehending both the implications of his own behavior and the operations of a court of law; he appears technically competent and responsible in the narrow sense of those terms.
>
> More broadly however, he is obviously given to a peculiar turn of mind which interprets everything in terms of a highly abstracted philosophy of life, a bit like

some of the new-age college professors whose deconstructionist tomes are impossible for the uninitiated to comprehend. In Mr. Ahrendt's view, the world consists of persons who are motivated either by negative selfishness ("Lust") or positive altruism ("Love"). For him, drug use resembles an almost sacramental consumption of what the "Divine" Lovingly provides us, while society's war on drugs is a misguided Lust to control what others do. I think that his voluminous letters on the topic are quite sincere, while tellingly naïve. His years of absorption with chemicals blinds him to the fact that his current audience is hardly receptive to the message his letters untiringly reiterate. I have the impression that his letters provide him the only means of expression in a situation in which he now feels powerless. That they may be received as more annoying than persuasive is unimportant to him; he is not optimistic about his fate and his Message is all he has left to give.

He strikes me as more "dyssocial" than "antisocial" in character, in the sense that he does express a set of values, but these are deviant from the perspective of the larger culture.

## II.  DISCUSSION

The propriety of expert testimony to negate *mens rea* is well-settled.[1] *See United States v. Schneider*, 111 F.3d 197, 201 (1st Cir. 1997) (noting that 18 U.S.C. § 17(a) was not intended to exclude "a defendant from offering [mental-condition] evidence to negate a requisite state of mind."); *United States v. Cameron*, 907 F.2d 1051 (11th Cir. 1990); *United States v. Bartlett*, 856 F.2d 1071 (8th Cir. 1998); *United States v. Twine*, 853 F.2d 676 (9th Cir. 1988); *United States v. Pohlot*, 827 F.2d 889 (3d Cir. 1987), *cert. denied*, 484 U.S. 1011 (1988).

Here, Dr. Aston's letter does not express the view that Mr. Ahrendt was incapable of the knowing and intentional actions necessary to establish a violation of this criminal law.[2] To the

---

[1] In 1984, Congress enacted the Insanity Defense Reform Act, which redefined insanity and made it an affirmative defense requiring proof by clear and convincing evidence. *See* 18 U.S.C. § 17. The statute also provides: "Mental disease or defect does not otherwise constitute a defense." *Id.* § 17(a). The notion that this subsection imposed an affirmative burden on the defendant to prove a lack of *mens rea* has been rejected. *United States v. Schneider*, 111 F.3d 197, 201 (1st Cir. 1997) (agreeing with *Pohlot* analysis); *United States v. Cameron*, 907 F.2d 1051, 1063 (11th Cir. 1990); *United States v. Pohlot*, 827 F.2d 889, 896 (3d Cir. 1987), *cert. denied*, 484 U.S. 1011 (1988); *United States v. Marenghi*, 893 F. Supp. 85, 90 (D. Me. 1995).

[2] This Court assumes Dr. Aston's testimony, if presented, would not violate Rule 704(b), which prohibits expert testimony "as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone." Fed. R. Evid.

contrary, to the extent he addresses this issue, he opines that Mr. Ahrendt "is capable of comprehending . . . the implications of his own behavior and . . . he appears [both] technically competent and responsible in the narrow sense of those terms."  To the extent it is relevant, his testimony appears not to demonstrate the absence of *mens rea*, but its existence.[3]

In *Schneider,* the First Circuit addressed relevance under Rule 401 in a similar context. The defendant in *Schneider* proposed to present the testimony of a medical doctor and a psychiatrist to explain that the defendant's medical and psychological condition impaired his judgment, rendering him unable to form the specific intent necessary to deceive.  Conceding Rule 401 relevance was "a close issue," *Schneider* concluded the expert testimony would have made the defendant's intent to defraud "'less probable than it would be without the evidence.'" *Schneider*, 111 F.3d at 202 (quoting Fed. R. Evid. 401).

Dr. Aston's proposed testimony, however, is far less probative on the issue of specific intent than the expert evidence in *Schneider*.  Dr. Aston opines that Mr. Ahrendt is "competent and responsible in the narrow sense of those terms," but implies if he has violated the law, it is due to his peculiar philosophy and his deviant values.  Unlike *Schneider,* Dr. Aston is not expressing a professional opinion that Mr. Ahrendt has a recognized psychological condition that has impaired his judgment.  Instead, he is translating Mr. Ahrendt's personal philosophy into more comprehensible language.[4]  It is questionable, therefore, whether Dr. Aston's testimony would survive a Rule 401 analysis; nevertheless, it is not necessary to rest this decision on Rule 401, because the evidence is demonstrably inadmissible under Rule 403.

---

704(b); *see Schneider,* 111 F.3d at 202; *United States v. Meader,* 914 F. Supp. 656, 658-59 (D. Me. 1996); *Marenghi,* 893 F. Supp. at 91 n.8.

[3] Even though Mr. Ahrendt has proffered Dr. Aston's testimony on this point, this Court assumes he is not proposing to offer Dr. Aston's testimony to establish his own guilt.

[4] Dr. Aston does an admirable job, but his ability to articulate Mr. Ahrendt's world view is more akin to that of a philosophy professor and may be beyond his expertise as a clinical psychologist, raising the Rule 702 questions *Schneider* alluded to.  *See Schneider,* 111 F.3d at 201.

The essence of Dr. Aston's opinion goes not to Mr. Ahrendt's intent, but to his motivation.  He explains Mr. Ahrendt's "peculiar turn of mind," which views drug use as "almost sacramental."  He offers his opinion that Mr. Ahrendt is "quite sincere" in his views, but "tellingly naïve."  He would testify that Mr. Ahrendt's views "express a set of values, but these are deviant from the perspective of the larger culture."

Dr. Aston's testimony is similar to the expert testimony excluded in *United States v. White*, 766 F.2d 22 (1st Cir. 1985).  In *White,* the defendant sought to admit psychiatric evidence that because of the influence of her mother, she was unable to resist her mother's request for assistance and was thus compelled to aid her in her drug dealing.  766 F.2d at 24.   *White* concluded that "evidence of a 'good' motive for violating the law is irrelevant if the defendant is in fact cognizant that the law is being violated by the proscribed actions, i.e., is capable of forming specific *criminal* intent."  *Id.* (emphasis in original).

Dr. Aston's testimony has a significant potential for confusing and misleading the jury and causing unfair prejudice.  The sincerity of Mr. Ahrendt's belief that he is entitled to  the "sacramental consumption" of drugs is not properly before the Court.  Dr. Aston may not give voice to and implicitly legitimize what he describes as Mr. Ahrendt's "deviant" set of values without effectively promoting jury nullification, an argument Mr. Ahrendt is not entitled to make.  *United States v. Manning,* 79 F.3d 212, 219 (1st Cir. 1996), *cert. denied,* 519 U.S. 853 (1996); *United States v. Sepulveda,* 15 F.3d 1161, 1189-90 (1st Cir. 1993).  Further, Dr. Aston's testimony could mislead the jury into thinking that Mr. Ahrendt's idiosyncratic philosophy amounts to a form of temporary insanity or ameliorates the offense.  *Schneider,* 111 F.3d at 203.  As *Schneider* explained, such evidence would reintroduce "the very concepts that Congress wanted to exclude [by § 17(a)] and thereby . . . mislead the jury."  *Id.*  In performing the Rule

4

403 balancing analysis, the attenuated probative value of Dr. Aston's testimony is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury.

## III.   CONCLUSION

This Court GRANTS the Government's Motion in Limine to exclude the proffered testimony of the Defendant's proposed expert witness, Dr. Jeffrey W. Aston.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 16th day of September, 2005